IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM TUDUJ, <br> M05570, <br><br> Plaintiff, <br><br> vs. <br><br> DR. SIDDIQUI, <br> DONALD R. UNWIN, <br> KIMBERLY BUTLER, <br> FRANK LAWRENCE, <br> JOHN BALDWIN, <br> T. BRADLEY, <br><br> Defendants. | Case No. 20-cv-924-DWD |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Tom Tuduj, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Danville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred at Menard Correctional Center (Menard). (Doc. 1). Upon initial review of the Complaint, the Court identified six claims against the named defendants, though it later granted a motion to dismiss that narrowed the case to five claims. (Docs. 14, 59). The operative claim for purposes of the present Motion is Claim 4 against Defendant Bradley, which is an Eighth Amendment conditions of confinement claim concerning the cellhouse temperature at Menard. The only Defendant who has moved for summary judgment on the exhaustion of administrative remedies is Defendant Bradley (Doc. 68), and Plaintiff has timely responded (Docs. 78,

79). The Court now finds it appropriate to deny the Motion for Summary Judgment. However, it will also dismiss the claim against Defendant Bradley because it is now clear that Plaintiff does not have a sufficient basis to proceed on Claim 4.

### BACKGROUND

In his complaint, Plaintiff alleged that the cells he lived in at Menard from 2009 through July of 2019 had inadequate climate control. Temperatures were so hot that they caused heat stroke and were so cold that they caused other ill effects. He alleges he has physical ailments that were exacerbated by the cold. Specifically in relation to Defendant Bradley, he alleged that Bradley responded to one of his grievances about the cell temperatures by writing "the temperature of the cell house is monitored per shift daily. When temperature falls below prescribed minimum the heat is turned on." (Doc. 1-1 at 35). The Court noted that although the mere response to a grievance is generally insufficient to state a claim, Plaintiff might be able to maintain a claim if he can establish that Bradley failed to investigate or adequately address his complaint about cellhouse temperatures. (Doc. 14 at 13-14).

Based on the allegations in the Complaint, which are more fully recounted in the Order of Initial Review (Doc. 14), the Court allowed one claim against Defendant Bradley to proceed beyond initial review:

> Claim 4:   Eighth Amendment conditions of confinement claim against Bradley for the lack of climate control in Plaintiff's cell.

(Doc. 14 at 8).

The Defendants have identified three grievances that are potentially relevant to this lawsuit, and one response from the Administrative Review Board (ARB). (Doc. 69). Plaintiff filed a response to the Motion for Summary Judgment wherein he focuses primarily on a single grievance from October 19, 2018.

## FINDINGS OF FACT

Plaintiff filed a grievance on October 19, 2018, concerning the temperatures in his cell at Menard from June 12, 2009, through October of 2018 when Plaintiff was moved from the South lowers cellhouse to the N2 cellhouse. In the grievance Plaintiff alleged:

> An informal letter has been omitted per previous counselor grievance. I arrived at Menard on 6-12-09, since that time there has been no heat or air conditioning. During the summer the heat inside reaches in excess of 110 degrees to where the paint melts from the walls. The South Lowers were shut down to fix the heaters, I was on 2 gallery 223 and 241 where both heaters did not work with the exception of 2 months in front of 241, but then I was moved to 223 where the heater was broken again. I was moved to N2 and once again the heaters are not on. The temps inside have been on (10-13-18 42 degrees) (10-14-18 43 degrees) (10-15-18 (43 degrees) (10-16-18 40 degrees) (10-17-18 42 degrees) (10-18-18 38 degrees) (10-19-18 41 degrees). I was moved on 10-4-18 and still no heat. There were vertical heat kerosine heaters brought in, however they were completely ineffective on 2 for 55 cells. The only time I felt heat was when I stood over it.
>
> I have a vaccine induced varicella-zoster virus, which is highly reactive to cold and heat, I have been in excruciating and severe pain since 6-2009. Boswell pharmacy refuses to provide prescribed $10.00 cure for this virus since 2014. These temperatures cannot possibly be constitutionally compliant. This has been an ongoing problem since 2009. The cold in the South lowers would go down to 28-45 degrees each winter. The heaters that did work in the South Lowers were turned off at 7pm, presumably to save energy. Officers would have space heaters in their cage of supervision.

(Doc. 69 at 13-14). The grievance was assigned number 447-10-18. On October 23, 2018, counselor Bradley responded, "the temperature of the cellhouse is monitored per shift

daily. When the temperature falls below prescribed minimum the heat is turned on." (Doc. 69 at 13).

The grievance records also include an April 2, 2019, Memorandum from the Grievance Office concerning grievance 447-10-18. The memorandum indicates that the grievance "was not submitted in the timeframe outlined in Department Rule 504; therefore, issue will not be addressed further." (Doc. 69 at 15-16). The grievance and memorandum were transmitted to the ARB, where they were received on August 1, 2019. On August 12, 2019, the ARB returned the grievance because it was "not submitted in the timeframe outlined in Department Rule 504. (Doc. 69 at 12).

Meanwhile, on April 1, 2019, Plaintiff submitted a "follow-up" grievance about the conditions in N2, as well as the conditions he experienced in South lowers from June of 2009 through October 4, of 2018. (Doc. 69 at 17-18). In the "follow-up" he indicated that he had not received a response to grievance 447-10-18, and he was continuing efforts to exhaust his claims. There are handwritten notations on this grievance that make it appear as though it was received in the Menard grievance office and was returned to Plaintiff with grievance 447-10-18 and with the April 2, 2019, memorandum. This grievance is stamped as received by the ARB on August 1, 2019, and was returned as "out of timeframe." (Doc. 69 at 17, 12).

Finally, on July 28, 2019, Plaintiff had moved to Hill Correctional Center, and from Hill he wrote a grievance wherein he stated he had submitted grievances about the conditions in South Lowers and N2 at Menard, but the grievance office deemed it untimely. He insisted that the issue was "ongoing" and that he requested clarification

from the grievance office after the April 2, 2019, memo, but got no response. He also sent correspondence to the Warden on May 8, 2019, but got no response. He states he was transferred to Hill on July 10, 2019. It appears he submitted this directly to the ARB and it was stamped as received on August 1, 2019. Like the other two grievances sent to the ARB, it was deemed untimely.

Plaintiff has provided copies of letters that he alleges he wrote to the grievance office (April 4, 2019), to the Warden of Menard (May 8, 2019), and to the IDOC Director (June 10, 2019), asking for them to assist him with grievance 447-10-18. (Doc. 78 at 29-31). In the letters he informs the grievance office and the Warden that he is confused by the "out of timeframe" ruling on grievance 447-10-18, and he did not get a DOC 0047, which the ARB would request to review the grievance.

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted).

However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60

days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing. The record clearly shows that the Defendant did not meet his burden to establish that Plaintiff failed to exhaust his administrative remedies, so the Motion (Doc. 68) must be denied. However, the Court finds that the evidence now shows

that Plaintiff has failed to state a substantive claim against Defendant Bradley, so Claim 4 will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

The Defendants argue that grievance 447-10-18 is insufficient to exhaust a claim against Defendant Bradley concerning the conditions of Plaintiff's cell because Plaintiff did not properly exhaust the grievance at the prison, and he did not appeal to the ARB until nearly 10 months after he received Defendant Bradley's October 23, 2018, response to his grievance. These arguments are misguided and are made with disregard for the documents actually contained in the record.

The Defendants contend that grievance 447-10-18 was not properly appealed to the ARB because the appeal was not accompanied by a report from a grievance officer at the prison. Plaintiff counters that he could not include the report from the grievance officer, because he did not receive one, even after trying for months to get one. The record supports Plaintiff's position. Plaintiff submitted grievance 447-10-18 on October 19, 2018. Defendant Bradley provided a response on the merits of the grievance on October 23, 2018. Plaintiff either transmitted this response to the grievance office for a further appeal *or* as of April 1, 2019, he had not received Bradley's response. On April 1, 2019, Plaintiff attempted to follow-up by writing directly to the grievance office in a new grievance. He asked for the status of 447-10-18 and indicated a desire to continue to pursue the contents of that grievance.

On April 2, 2019, Plaintiff received a memorandum from the grievance office that indicated grievance 447-10-18 would not be addressed further because it was untimely. As Plaintiff contends in his response to summary judgment, he did not receive a typical

grievance officer response form[1], so he could not have included the information to the ARB that Defendant insists he should have included.  Despite the lack of receipt of this form on April 2, 2019, Plaintiff spent months trying to get the formal grievance officer report so that he *could* submit a *proper* appeal to the ARB about grievance 447-10-18.  Plaintiff included proof of these efforts in the form of letters he wrote to the Grievance Office (April 4, 2019), the Warden (May 8, 2019), and the IDOC Director (June 10, 2019).  Plaintiff avers he never got a response to any of these letters.

On July 10, 2019, Plaintiff transferred from Menard to Hill Correctional Center.  On July 28, 2019, he made a final attempt to address grievance 447-10-18 by submitting the responses he had received at Menard in April 2019 directly to the ARB along with an explanation that he never got a formal grievance officer response, and instead just got the April 2, 2019, memorandum.  (Doc. 78 at 26-27).  The ARB received the materials from Plaintiff on August 1, 2019, and on August 12, 2019, the ARB responded that the issue would not be addressed because it was not submitted within the timeframe set out by Department Regulation 504.  (Doc. 78 at 28).  The ARB did NOT check the box to indicate that the grievance was insufficient for appeal because it lacked the grievance officer response form (the DOC 0047).  The ARB also did not reject the appeal of the grievances as received 30 days past the Chief Administrative Officer's decision.  Both of these

---

[1] Plaintiff refers to the grievance officer response form as a DOC 0047.  The Court is familiar with this form, and an example of this form is appended to Plaintiff's complaint.  (Doc. 1-1 at 15).  A DOC 0047 is the response form that an IDOC Grievance Officer generally completes, that the Chief Administrative Officer signs off on, and that an inmate can sign and transmit to the ARB for the final step of the grievance procedure.

dispositions—a rejection as incomplete, or a rejection as beyond 30 days—are options on the ARB form that the ARB used to respond to Plaintiff. (Doc. 78 at 28).

Upon a close review of these documents, it is apparent that Defendant Bradley's counsel has argued for a disposition of this case on grounds that theoretically *could* exist, but that do not align with what actually happened in this case. The ARB did NOT reject Plaintiff's appeal of grievance 447-10-18 because it lacked a Grievance Officer's report, and it did NOT reject the grievance appeal because it arrived more than 30 days after the ruling at the prison on the grievance. Instead, the ARB rejected the grievance for the same reasons as the grievance office at Menard. Both the Menard grievance office and the ARB denied grievance 447-10-18 for being filed more than 60 days after the underlying incidents. This ruling was at least partially erroneous.

Some of the contents of Grievance 447-10-18 occurred within 60 days of filing. Specifically, Plaintiff complained of ongoing issues in his cell in N2 on October 13, 2018, through October 19, 2018. He also complained that his problems in South Lowers lasted from June of 2009 all the way thru his move to N2 in October of 2018. At least some of this time would have fallen within 60 days of his October 19, 2018, grievance. Sixty days from October 19, 2018, would have included any claim about heating or cooling of the South Lowers cells or N2 cells from August 20, 2018, to the filing of the grievance. As such, the prison grievance office and the ARB erred when they deemed his entire grievance untimely. Plaintiff attempted to remedy this issue directly with the Grievance Officer, the Warden of Menard and the Director of IDOC before pursuing an appeal to the ARB. On these facts, it appears that Plaintiff did everything he could to exhaust his

claim about cell conditions, at least as to the 60 days prior to October 19, 2018. While the Court finds that grievance 447-10-18 was pursued to the fullest extent possible, it will still briefly comment on Plaintiff's alternative theories about why he should be excused from the exhaustion requirement of the PLRA.

The Court notes that Plaintiff presents additional arguments about why he believes grievance 447-10-18 should be accepted regardless of timeliness. Specifically, he argues he was too depressed for three years to file a grievance, he did not file a grievance out of fear that he would be moved to a more dangerous cellhouse, and he did not file a grievance because he did not know how to do so. The Court will reject all these grounds because they are not valid reasons to expand the 60-day timeframe set out in 20 Ill. Admin. Code § 504.810(a).

Plaintiff also argues that the 60-day timeframe should be extended based on the doctrine of continuing violation, which can apply to the statute of limitations period for tort claims. The continuing violation has been applied to prison grievances under *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). In *Turley*, the Seventh Circuit held that prisoners need not file multiple, successive grievances raising the same issue if the objectionable condition is continuing, but this application of a continuing violation is forward looking, not retrospective. An inmate may file one grievance in 2009 about cell conditions, and then he does not need to continue to file one every sixty days for the next ten years, but the opposite does not hold true. A grievance in 2018 is not retroactively applicable to a condition that began ten years ago. This makes sense because the point of the PLRA's exhaustion requirement is to give the prison a chance to remedy a problem.

If a prison gets a grievance in 2018 about an issue that began in 2009, it cannot go back in time to remedy problems that occurred almost ten years earlier. As such, the Court is not persuaded that any theory of a continuing violation could save Plaintiff's complaints about his cell conditions from 2009-early 2018.

Despite finding that the Defendant has not met his burden on the issue of exhaustion in so much as grievance 447-10-18 was sufficient to exhaust at least as to events from August 20, 2018 to October 19, 2018, the Court also now finds it appropriate to reconsider if Plaintiff has presented an adequate claim against Defendant Bradley. By the terms of 28 U.S.C. § 1915A, the Court shall, "as soon as practicable," dismiss any portion of a complaint if it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(a)-(b)(1). As the Court noted in the order of initial review, a claim against an official who merely processes a grievance is generally insufficient. *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011) (the alleged mishandling of a grievance by a person who did not otherwise cause or participate in underlying conduct states no claim). To plead a valid claim against a grievance official an inmate must establish that the reviewing official knew about unconstitutional conduct, and they facilitated, approved, or turned a blind eye to it. (Doc. 14 at 13-14); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

On initial review, the Court noted that more information may be needed to determine if Defendant Bradley was sufficiently involved in the Constitutional violation as an individual who reviewed the grievance to warrant Eighth Amendment liability. On a closer look, and with the benefit of more information about the processing of the

grievance, the Court now finds that Defendant Bradley was not sufficiently involved in the grievance process such that he should be held liable for personally causing Plaintiff's conditions of confinement problems to persist. Although Bradley was the first to respond to Plaintiff's grievance, he did so in a timely fashion, and he responded to the substance of the grievance. Plaintiff's grievance problems began *after* Bradley responded and had nothing to do with Bradley. Plaintiff ran into issues with grievance 447-10-18 while it was at the Menard Grievance Office for processing. This is evidenced both by his follow-up grievance on April 1, 2019, and by his letters to the Grievance Office, the Warden, and the IDOC Director. In all of these documents, he complained about the handling of his grievance by the grievance office, not by Defendant Bradley. In fact, in his follow-up grievance on April 1, 2019, he did not mention Bradley by name, and he did not specifically contradict Bradley's October 23, 2018, grievance response. On July 28, 2019, when he wrote a grievance directly to the ARB, he also did not mention Bradley by name.

Viewing this record evidence as a whole, it does not appear that Bradley was the one who caused issues with the grievance, that Bradley turned a blind eye to the issue, or that Bradley otherwise participated in hindering the processing of Plaintiff's grievance. Bradley's only role was to provide a written response to Plaintiff's grievance on October 23, 2018, within just five days of receiving the grievance. Based on this limited involvement, it cannot be said that Bradley personally caused or contributed to the conditions of Plaintiff's cells in South Lowers or N2. As such, even though Plaintiff exhausted or attempted to exhaust a claim about these cell conditions, he has not made

out a sufficient claim against Bradley and the Court now finds it appropriate to dismiss Claim 4 against Defendant Bradley as insufficient to state a claim.

A merits discovery schedule will be issued separately for the remaining claims in this case.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion (Doc. 68) is **DENIED**. However, the Court finds that Plaintiff has failed to plead an adequate claim against Defendant Bradley for his involvement with Plaintiff's grievance about his conditions of his confinement, so Claim 4 is now dismissed without prejudice as inadequately pled. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Bradley as a party to this case.

The previously imposed stay on merits discovery is **LIFTED** and the Court will issue a schedule for next steps of merits discovery.

**IT IS SO ORDERED.**

Dated: November 28, 2023

_____
DAVID W. DUGAN
United States District Judge