IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TOM TUDUJ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CV-924-DWD |
| | ) | |
| BOSWELL PHARMACY SERVICES et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Tom Tuduj ("Tuduj"), an inmate of the Illinois Department of Corrections ("IDOC") incarcerated in Graham Correctional Center brings this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights allegedly occurring when he was housed at Menard Correctional Center. (Doc. 1; Doc. 14). Defendants Dr. Mohammed Siddiqui ("Siddiqui") and Dr. Donald R. Unwin ("Unwin") have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docs. 128, 129, 134, and 135).[1] Plaintiff has filed cross-motions for summary judgment. (Docs. 126 and 127). For the reasons set forth below, the Court **GRANTS** Defendants' motions for summary judgment and **DENIES** Tuduj's motions for summary judgment.

---

[1] Plaintiff filed responses to both motions (Docs. 128 and 167), and Defendants filed replies (Docs. 157 and 170). Defendants filed responses to Plaintiff's motions (Docs. 131 and 137), and Plaintiff filed reply as to Defendant Unwin's response (Doc. 142).

# I.    BACKGROUND

## A. Instant Case

In the Complaint (Doc. 1), Tuduj alleges he has suffered from chronic and persistent pain and various medical symptoms since the beginning of his incarceration at Menard Correctional Center in 2009. He attributes many of his symptoms, including cold sores, facial redness, swollen lips, extreme photophobia, severe migraines, burning/tingling sensations, fever blisters, cellulitis of the lips, intolerance to temperature extremes, and constant eye irritation, to varicella-zoster virus (VZV) (sometimes described as shingles), which he believes he contracted either from a childhood vaccine or from a defective prescription medication taken prior to his incarceration.

The complaint alleges that Siddiqui, a physician who treated Tuduj at Menard, exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment by failing to provide adequate treatment for his alleged VZV-related symptoms. Specifically, Tuduj claims Siddiqui prescribed treatments (including a cream and ibuprofen) that Tuduj alleges were ineffective for VZV, and that Siddiqui failed to provide further meaningful care after Tuduj requested dimethyl sulfoxide (DMSO), a medication Tuduj believed was appropriate for his condition. Tuduj further alleges that on December 12, 2018, after he informed Siddiqui that he would file a lawsuit if he did not receive proper treatment, Siddiqui retaliated against him in violation of the First Amendment by failing to properly renew a medical permit for two "new" sponge

mattresses that Tuduj needed for shoulder pain, causing his shoulder condition to worsen.

The complaint also alleges that Unwin, an off-site ophthalmologist employed at Quantum Vision Centers who examined Tuduj on October 22, 2018, exhibited deliberate indifference to Tuduj's serious medical needs in violation of the Eighth Amendment by failing to perform diagnostic tests or provide meaningful treatment for Tuduj's eye-related symptoms. Tuduj further alleges that Unwin acted with hostility and retaliated against him in violation of the First Amendment by withholding appropriate treatment because of Tuduj's statements during the visit and/or his criminal background.

Although the complaint asserted additional claims against numerous other defendants, those claims have been resolved.[2] The only claims that remain pending are:

Claim 1:    Eighth Amendment deliberate indifference against Siddiqui and Unwin for failure to treat Tuduj's alleged VZV;

Claim 6:    First Amendment retaliation against Siddiqui for allegedly denying renewal of the double-mattress permit; and

Claim 7:    First Amendment retaliation against Unwin for allegedly withholding treatment.

---

[2] The claims as to Defendants Boswell Pharmacy Services LLC, Menard Pharmacist, Rob Jeffreys, John Doe, and Patty Sneed were dismissed without prejudice at screening. (Doc. 14). The claims as to Defendants Wexford health Source, Inc. and Quantum Vision Centers were subsequently dismissed as insufficient. (Doc. 59). The claims against Defendant Todd Brooks were dismissed because he is deceased, and Plaintiff did not identify a substitute party. (Doc. 49). The claims against Defendant T. Bradley were dismissed without prejudice for failure to state a claim. (Doc. 80). The claims as to Kimberly Butler, Frank Lawrence, and John Baldwin were dismissed with prejudice as agreed to by the parties following a court-ordered mediation. (Docs. 117, 119, 125, 162, and 176). The only remaining claims are those directed against Defendants Siddiqui and Unwin.

### B. Prior Litigation

In 2017, Tuduj filed a *pro se* § 1983 action in this District alleging Eighth Amendment deliberate indifference to serious medical needs by medical providers at Menard Correctional Center and their employer, Wexford Health Sources, Inc. *Tuduj v. Caldwell*, No. 17-cv-0219-NJR-GCS (S.D. Ill.). He alleged that, from approximately 2006–2009, he had suffered from a chronic VZV or shingles infection that caused severe photophobia, migraine headaches, and recurring rashes and cold sores on his body and face. He contended that defendants were deliberately indifferent by failing to diagnose or treat an underlying VZV infection, particularly by denying dimethyl sulfoxide ("DMSO") for his skin complaints and delaying or restricting access to adequate tinted lenses or sunglasses for photophobia. The defendants included physicians Samuel Nwaobasi, John Trost, Reynal Caldwell, Stephen Ritz, and Wexford.

Following discovery, including Tuduj's deposition and medical records from approximately 2009-2016, defendants moved for summary judgment. On September 30, 2019, the district court granted summary judgment to all remaining defendants. The court found that Tuduj admitted no medical professional had diagnosed him with shingles or VZV and that his VZV theory was a self-diagnosis derived from "reverse engineering" prescriptions and research rather than objective medical evidence. The court further found that the record reflected repeated evaluation and treatment for Tuduj's complaints, including pain medication, glasses, lenses, and topical and oral medications (including

acyclovir and doxycycline), and that the challenged denials of DMSO and rubber sunglasses reflected medical judgment and applicable guidelines rather than deliberate indifference. The court concluded that Tuduj could not establish an objectively serious medical condition caused by shingles/VZV and, alternatively, that the evidence did not support a finding that any defendant was deliberately indifferent. *Tuduj v. Caldwell*, No. 17-cv-0219-NJR-GCS, 2019 WL 4750606 (S.D. Ill. Sept. 30, 2019).

Tuduj appealed and, on October 13, 2020, the Seventh Circuit affirmed in an unpublished decision. *Tuduj v. Lawrence*, 829 F. App'x 120 (7th Cir. 2020). The Appellate Court described Tuduj's VZV theory as self-diagnosed and held that the undisputed evidence showed repeated medical evaluation and treatment for headaches, photophobia, and rashes. It rejected his contention that the Constitution required the specific treatments he sought, such as DMSO or different sunglasses, reiterating that the Eighth Amendment does not entitle an inmate to demand specific care and that the treatment provided did not reflect deliberate indifference. *Id.*

## II.    MOTION TO STRIKE

Tuduj has filed a Motion to Strike Unwin's Motion for Summary Judgment. (Doc. 171). Tuduj contends that Unwin's affidavit, filed in support of his Motion for Summary Judgment, does not comply with the "personal knowledge requirement" set out in Rule 56 of the Federal Rules of Civil Procedure. The Motion will be denied for two reasons.

First, the motion is untimely and procedurally improper. Tuduj filed his response to the summary judgment motion on August 27, 2025 (Doc. 167) and did not file the motion to strike until September 16, 2025 (Doc. 171). Federal Rule of Civil Procedure 12(f)

5

requires such motions to be made before responding to the pleading or, if no responsive pleading is permitted, within 21 days after service. Further, Rule 12(f) applies only to pleadings, and a motion for summary judgment and its supporting affidavit do not constitute a "pleading" under Rule 7(a). Thus, a motion to strike is not the proper vehicle for challenging summary judgment evidence. Instead, challenges to summary judgment evidence are properly addressed through objections under Rule 56(c)(2) or in the response/opposition to the motion itself. *See* e.g., *Davis v. McKenzie*, No. 16-62499-CIV, 2017 WL 8809917 (S.D. Fla. Nov. 3, 2017).

Second, the motion fails on its merits. The affidavit substantially complies with the personal knowledge requirement of Rule 56(c)(4). While the introductory paragraph states that the assertions are true and correct "to the best of my knowledge, information, and belief," the Court focuses on the substance of the affidavit rather than isolated boilerplate phrasing. *See Sherman v. Bell Atl.*, No. 95 CIV. 1817 (MBM), 1996 WL 492985, at *8 (S.D.N.Y. Aug. 29, 1996) (declining to elevate form over substance where the affidavit's contents reflect personal knowledge); *Johnson v. Yonkers*, No. CIV.A. MJG-15-237, 2015 WL 4757154, at *2 (D. Md. Aug. 11, 2015) (refusing to strike affidavit that used "information, knowledge and belief" phrasing where the substance reflected personal knowledge). The governing principle is that affidavits must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4).

Here, Unwin, as the treating ophthalmologist, attests to facts derived from his examination of Tuduj. The affidavit's substance reflects personal knowledge derived

from his role as Tuduj's treating ophthalmologist, attesting to matters such as personally examining Tuduj, conducting the slit-lamp examination, observing findings he recorded, assessing Tuduj's condition, and forming a treatment plan based on his own clinical observations, medical judgment, education, training, experience, and review of the relevant medical records. Those are specific factual assertions that would be admissible at trial, and reasonable inferences drawn from such firsthand experience satisfy Rule 56.

Accordingly, Tuduj's Motion to Strike (Doc. 171) is **DENIED**. Likewise, Tuduj's supplemental pleading (Doc. 175) seeking to strike Unwin's Response based on the same arguments is **DENIED**.

### III.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.' " *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Liberty Lobby*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Liberty Lobby*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Liberty Lobby,* 477 U.S. at 252.

The court reviews the parties' cross-motions for summary judgment "construing all facts, and drawing all reasonable inferences from those facts, in favor of ... the non-moving party." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)). However, the court "may not grant summary judgment for either side unless the admissible evidence as a whole -- from both motions -- establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

## IV.    FACTUAL RECORD[3]

### A.  Rule 56.1 Statements and Responses

The Court considers the parties' submissions under Federal Rule of Civil Procedure 56 and SDIL Local Rule 56.1. Facts supported by admissible record citations and not properly controverted with admissible evidence and pinpoint citations are treated as admitted for purposes of summary judgment. The Court disregards "disputes" that do not engage the asserted fact, are unsupported by the cited record, or consist of argument, speculation, or legal conclusions rather than admissible evidence. The Court focuses on facts that are material to the elements of the claims asserted against each defendant.[4]

### B.  Material Facts

Tuduj is an IDOC inmate who was housed at Menard Correctional Center during the relevant period. He reports his highest level of education is a Master's degree in project management. He has no formal medical education, training, or experience. Tuduj believes a vaccine he received earlier in life caused him to develop varicella-zoster virus ("VZV") as an adult and attributes intermittent facial rash and head/eye pain to VZV.

---

[3] These facts are drawn from the parties' Rule 56.1 statements and responses after review of the record to determine which facts are genuinely undisputed and supported by admissible evidence. In some instances, the Court supplies additional citations to underlying medical records or deposition testimony where helpful to clarify the record.

[4] For example, in responding to Unwin's Statement of Material Facts, Tuduj repeatedly cites only "Exhibit 1," his affidavit, to dispute numerous paragraphs. (Doc. 167 Plaintiff's responses to ¶¶ 15, 19, 25, 29, 35, 38–44, 47–48, 50–54.). Exhibit 1, however, contains no factual averments about the events at issue; it states only that Tuduj is over eighteen and "competent to testify to everything in this motion." Because Exhibit 1 supplies no factual support, it does not controvert any asserted fact, and the Court disregards those unsupported denials and deems the corresponding facts admitted. See SDIL LR 56.1(f),(g).

### 1. Dr. Mohammed Siddiqui

Tuduj's claims against Siddiqui concern: (1) the treatment Siddiqi provided for symptoms Tuduj attributes to VZV from November 2016 through October 2018; and (2) a dispute regarding a double mattress permit that arose at a December 11, 2018 visit with Siddiqui.

#### a. *Siddiqui's Treatment for Tuduj's Alleged VZV symptoms*

On November 3, 2016, Tuduj saw Siddiqui primarily to renew low bunk, low gallery, and double-cuff permits. During that visit, Siddiqui also prescribed triamcinolone cream, a topical corticosteroid commonly used for inflammatory or itching skin conditions. Tuduj used the cream briefly (testifying to stopping use anywhere from approximately one week to one month) but discontinued it because he believed it did not work and because he had read about potential side effects of extended steroid use. Although the prescription remained active, Tuduj testified he would throw it away or store it.

On March 30, 2017, Tuduj saw optometrist Dr. Sutterer (a non-party) regarding rash and head/eye pain complaints. Dr. Sutterer provided sunglasses for light sensitivity and documented Tuduj's desire to be treated with DMSO cream.

Tuduj next saw Siddiqui on April 27, 2017 for shoulder pain, not for complaints Tuduj associates with VZV. Siddiqui ordered a double-mattress permit for shoulder pain.

On November 28, 2017, Tuduj saw Siddiqui for a rash complaint involving the groin/inner leg area. Tuduj refused to be examined and requested DMSO. Siddiqui indicated he was not familiar with DMSO being used to treat Tuduj's complaint. On

March 1, 2018 and April 6, 2018, Tuduj again demanded DMSO. Siddiqui indicated DMSO was not known to treat Tuduj's complaints and further noted that Tuduj had been seen by the optometrist who ordered sunglasses to address his complaints. On August 3, 2018, Tuduj again demanded DMSO for a rash he attributed to a decades-old vaccine. Siddiqui assessed the rash as more consistent with eczema and referred Tuduj to optometry/eye care for Tuduj's complaints of facial rash and head/eye pain and for further assessment.

Following that referral, Tuduj saw Dr. Sutterer on August 10, 2018. Dr. Sutterer's charting reflects that Tuduj was referred to "eye" on August 3, 2018 for "rash on face?" and includes notations of "zoster" on certain forms. (Doc. 129-2, pp. 135, 301). On September 27, 2018, Siddiqui and non-party Dr. Ritz approved a referral to an ophthalmologist for Tuduj's complaints of facial rash and head/eye pain. Tuduj acknowledged that Siddiqui's referrals to optometry and ophthalmology were appropriate. Tuduj was then evaluated offsite by ophthalmologist Unwin on October 22, 2018.

### b. *Double Mattress Permit*

On April 27, 2017, Siddiqui issued Tuduj a double-mattress permit in connection with shoulder pain (including possible rotator cuff impingement). (Doc. 129-1; Doc. 129-2 at 117).

On October 19, 2018, Tuduj filed a grievance about the double mattresses in his cell after a housing transfer. (Doc. 129-5 at 5–7, 18–22). Tuduj reported that his double mattresses, which were brand new, were not transferred with him. Instead, Tuduj was

given double mattresses that were old and worn, which aggravated his shoulder pain. (*Id.*). He requested replacement with "new" double mattresses. (*Id.*). This grievance did not reference Siddiqui.

On November 25, 2018, Tuduj saw a nurse practitioner seeking a knee-sleeve permit and a permit for "new" double mattresses. The nurse practitioner determined Tuduj did not have a medical need for either and documented that Tuduj stated he wanted to terminate the visit and would submit another request to be seen by a different provider "who would give him what he wanted." (Doc. 129-2 at 118–19, 146).

On December 11, 2018, Tuduj saw Siddiqui and requested a knee sleeve and a permit for "new" double mattresses. (Doc. 129-1 at 122–29; Doc. 129-2 at 148; Doc. 129-5 at 1–2). Siddiqui explained that he was not in charge of supplies and brought Sgt. Snell into the room to address Tuduj's property-related request for "new" mattresses. (*Id.*). During this encounter, Tuduj referenced potential litigation in connection with the mattress dispute and/or Siddiqui's refusal to prescribe DMSO. (*Id.*). The parties dispute the precise sequence of these statements and whether Tuduj's litigation reference occurred before or after Siddiqui declined to modify the permit to specify "new" mattresses. (*Id.*). It is undisputed, however, that after the December 11 visit Tuduj's double-mattress permit remained in effect and Siddiqui ordered the knee sleeve Tuduj requested. (*Id.*). Tuduj's primary complaint is that Siddiqui did not amend the permit to require "new" double mattresses. (*Id.*).

After the December 11 visit, Tuduj filed a grievance about the encounter and his request that the permit specify "new" double mattresses. (Doc. 129-5 at 1–2). Tuduj

reported that Siddiqui said he did not control mattress distribution, while Sgt. Snell stated Tuduj could not receive "new" mattresses unless the permit specified "new." (*Id*.). The response noted Tuduj had a current double-mattress permit and further indicated the counselor spoke with Sgt. Snell, who said he would address the issue. (*Id*.).[5]

### 2. Dr. Donald R. Unwin

Unwin is a board-certified ophthalmologist employed with Quantum Vision Centers. Tuduj presented to Quantum Vision Centers on October 22, 2018 for an ophthalmology evaluation based on a reported history of herpes zoster and facial rash/eye complaints. A technician recorded Tuduj's history and performed routine preliminary testing, including visual acuity, ocular motility, and intraocular pressure testing, with findings within normal limits. Unwin performed an ocular examination, including slit-lamp examination, and documented normal findings. Unwin did not observe eye redness or a facial rash during the encounter. Based on his examination, Unwin did not believe Tuduj had herpes zoster and found no abnormal ocular condition requiring treatment. Unwin was unaware of the reasons for Tuduj's imprisonment during the encounter.[6] Unwin advised Tuduj to return as needed if pain or vision worsened. Tuduj did not return for follow-up care.

---

[5] To the extent that Tuduj is attempting to advance a new retaliation theory based on alleged events in march or April 2019 (e.g., discontinuation of a medical hold for transfer) (Doc. 155 ¶ 13) in response to Siddiqui's summary judgment motion, that theory is disregarded. *See Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 813-14 (7th Cir. 2011) (Plaintiff may not advance a new theory of retaliation in response to a summary judgment motion).

[6] Tuduj purports to dispute Unwin's statement that he did not know of Tuduj's criminal charges, asserting that "every medical jacket has the picture and charges on the first left page." (Doc. 167 ¶ 38). Plaintiff cites only "Exhibit 1," his affidavit, which contains no factual averment that Unwin knew of the charges (or that Unwin reviewed any "medical jacket" containing such information), nor has Tuduj

Tuduj asserts that, during the examination, Unwin was preoccupied and unfriendly, became visibly upset when Plaintiff mentioned vaccine-related VZV, stated that Plaintiff "did not get this virus from a vaccine," and stated that Unwin "is the one who went to medical school," and that Unwin later became hostile and "stormed out," leaving Plaintiff without treatment. (Doc. 127, p. 10).

### 3. DMSO

DMSO is a chemical agent and industrial solvent. It is only FDA approved as an intravesical solution for the treatment of interstitial cystitis and extravasation. DMSO is not FDA approved to treat herpes, zoster, smallpox, or any other medical condition.

### 4. Records Tuduj claims establish he was diagnosed with VZV

Tuduj contends his medical records establish three "VZV" diagnoses: (1) a February 2011 encounter with non-party Dr. Faheem; (2) August 2018 optometry records associated with Dr. Sutterer; and (3) an October 22, 2018 optometry record associated with Dr. Sutterer (Doc. 167 ¶ 57). Defendants dispute that the cited materials reflect the diagnoses Tuduj claims.[7]

#### a. February 2011 Record (Dr. Faheem)

Tuduj relies on a February 2011 encounter with Dr. Faheem in which he was treated for cold sores and a secondary lip infection and was prescribed, among other medications, an antiviral. The contemporaneous record reflects treatment for cold sores

---

submitted the referenced "medical jacket" or medical file into evidence. (Doc. 167 ¶ 38; Doc. 167, p. 52). Because Plaintiff's response is unsupported by admissible evidence and does not controvert Unwin's asserted lack of knowledge, the fact is deemed admitted for purposes of summary judgment.

[7] Plaintiff references Dr. Faheem's prescription of doxycycline and acyclovir on February 28, 2011, but the cited record reflects a February 10, 2011 entry. (Doc. 167 ¶ 57; Doc. 167, p. 59).

and a secondary lip infection and includes an antiviral prescription, but it does not expressly state a diagnosis of herpes zoster/varicella zoster virus. (Doc. 167 ¶ 57; Doc. 167, pp. 59–60). Tuduj similarly testified that Dr. Faheem diagnosed him with "cold sores" and "a secondary infection in the form of cellulitis of the lips," and that the provider did not specify whether the cold sores were simplex virus. (Doc. 129-1, pp. 21–22).

### b.  *August 2018 and October 2018 Optometry Records (Dr. Sutterer)*

Tuduj also points to optometry forms from August and October 2018 signed by Dr. Sutterer that include the word "zoster" in a "patient diagnosis" field. (Doc. 129-2, p. 135; Doc. 129-2, p. 301). The August 2018 charting reflects a referral to "eye" for "rash on face?" and notes that Tuduj sought DMSO, but that Drs. Siddiqui and Sutterer were uncomfortable prescribing it. (Doc. 129-2, p. 301). It further notes that Tuduj stated he would be willing to sign a waiver and see an ophthalmologist to obtain a DMSO prescription. (*Id.*). The "patient diagnosis" field containing the "zoster" notation does not document exam findings or ocular involvement, the eye-exam portion is blank, and it indicates no prescriptions were written. (Doc. 129-2, p. 135). An October 22, 2018 optometry record likewise contains "zoster" in a diagnosis box and indicates no prescriptions were written. (Doc. 167, p. 83).

The forms do not clearly show whether "zoster" reflects an independent optometry diagnosis, a referral descriptor, or Tuduj's reported history.

## V.    DISCUSSION

### A.  Issue Preclusion as to Claim 1 Deliberate Indifference

Siddiqui argues that Tuduj's Eighth Amendment deliberate-indifference claim is barred in whole or in part by issue preclusion based on Tuduj's prior § 1983 litigation, *Tuduj v. Caldwell*, No. 17-cv-0219-NJR-GCS, and the Seventh Circuit's affirmance, *Tuduj v. Lawrence*, 829 F. App'x 120 (7th Cir. 2020).

Issue preclusion (collateral estoppel) bars relitigation of an issue of fact or law that was resolved by a valid and final judgment in prior federal litigation. *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013); *Bravo-Fernandez v. United States*, 580 U.S. 5, 7–8 (2016). Because the prior judgment was entered by a federal court, the Court applies federal common law. Under that law, issue preclusion applies when (1) the issue is identical to one decided in the prior action, (2) it was actually litigated and decided on the merits, (3) the determination was essential to the final judgment, and (4) the party against whom preclusion is invoked was fully represented in the prior action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014); *Waagner v. United States*, 971 F.3d 647, 657 (7th Cir. 2020).

In Tuduj's prior § 1983 case, the district court entered summary judgment for defendants on deliberate-indifference claims premised on Tuduj's contention that he suffered from a systemic VZV infection that caused migraines, photophobia, and rashes and required particular testing and treatment. The court found, based on the summary-judgment record, that Tuduj had not been medically diagnosed with shingles/VZV and that his theory was a self-diagnosis derived from "reverse engineering" prescriptions and

16

research. The court further concluded that the record reflected repeated evaluation and treatment and that Tuduj's claim was largely a disagreement with medical judgment and a demand for different care. The Seventh Circuit affirmed, emphasizing that the evidence showed ongoing evaluation and treatment and reiterating that denial of DMSO to treat a virus that no doctor diagnosed did not reflect a complete abandonment of medical judgment; the Eighth Amendment does not entitle an inmate to specific treatment. *Tuduj v. Lawrence*, 829 F. App'x 120, 124 (7th Cir. 2020).

Those determinations were essential to the judgment affirmed on appeal, and Tuduj had a full and fair opportunity to litigate them. Issue preclusion therefore applies, but only to the extent it forecloses relitigation of the discrete issues actually decided. In particular, Tuduj may not relitigate the premise that the Constitution required providers to furnish his preferred treatment (including DMSO and antiviral-centered care) for a self-diagnosed VZV condition, nor may he revive the "reverse engineering" inference (i.e., that prescriptions or isolated record notations necessarily establish a VZV diagnosis) insofar as that inferential methodology was already rejected as speculative and insufficient to establish deliberate indifference. *Id.*

Issue preclusion, however, is applied narrowly. The present case concerns later encounters, including Siddiqui's care from November 2016 through October 2018 and Unwin's October 22, 2018 ophthalmology evaluation. Preclusion does not bar consideration of what these defendants knew and did during the time period relevant to Claim 1. But it does limit Tuduj's attempt to treat his VZV theory, and his asserted entitlement to the specific course of care he demanded, as already established through

the same self-diagnosis framework rejected in the prior case. In any event, as is set forth more fully below, Defendants are entitled to summary judgment on the merits of Claim 1 even assuming issue preclusion does not apply.

### B. Merits Analysis as to Claim 1 Deliberate Indifference

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-592. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

The first consideration is whether the prisoner has an "objectively serious medical condition." *Arentt v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)(citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added).

18

To show that prison officials acted with deliberate indifference, a plaintiff produce evidence that defendants knew his medical condition posed a serious risk to his health and consciously disregarded that risk. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). This subjective standard requires more than negligence and approaches intentional wrongdoing; negligence, even gross negligence, does not violate the Constitution. *Id.*; *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Deliberate indifference may be shown where a defendant's treatment decision so substantially departs from accepted professional judgment, practice, or standards that it is not based on judgment at all; where the defendant refuses to take instructions from a specialist; persists in a course known to be ineffective; chooses an easier and less efficacious treatment without exercising judgment; or causes an inexplicable delay in treatment serving no penological interest. *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). But an inmate has no constitutional right to demand specific medications, tests, or treatment; he is entitled to reasonable measures to address a substantial risk of serious harm, not the course he prefers. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

The parties dispute whether Tuduj suffered from an objectively serious medical condition and whether he was ever diagnosed with VZV. The Court need not resolve whether Tuduj's symptoms, with or without a diagnosis of VZV from a physician, constitute an objectively serious medical condition because to survive summary judgment, Tuduj must demonstrate that Defendants knew of his conditions yet deliberately withheld treatment. But, as is discussed more fully below, the undisputed

record shows that Defendants evaluated his symptoms, made decisions based on medical judgment, and provided treatment when appropriate.

### 1. Dr. Donald R. Unwin

Even construing the evidence and drawing reasonable inferences in Tuduj's favor, no reasonable jury could find that Unwin acted with deliberate indifference. The undisputed record shows that Tuduj presented on October 22, 2018 for an ophthalmology evaluation based on his reported history and complaints. A technician recorded Tuduj's history and performed routine preliminary testing. Unwin then performed an ocular examination, including slit-lamp examination, and documented normal findings. Unwin did not observe eye redness or a facial rash during the encounter, did not believe Tuduj had herpes zoster, and found no abnormal ocular condition requiring treatment. He advised Tuduj to return as needed if pain or vision worsened; Tuduj did not return for follow-up care.

Tuduj's core contention is that Unwin did not accept that Tuduj was suffering from vaccine-induced VZV and did not order PCR or Tzanck testing or provide the specific treatment Tuduj wanted. But disagreement with a physician's diagnostic approach or treatment plan does not constitute deliberate indifference, and Tuduj has no right to demand specific testing or treatment. *Arnett*, 658 F.3d at 754; *Tuduj v. Lawrence*, 829 F. App'x 120, 124. (7th Cir. 2020). On this record, Tuduj has not produced evidence that Unwin knew of and consciously disregarded a serious risk to Tuduj's health. *Holloway*, 700 F.3d at 1073. Nor has Tuduj produced evidence that Unwin substantially departed from accepted professional judgment, refused specialist instructions, or persisted in a

course known to be ineffective. *Petties*, 836 F.3d at 729–30. At most, the record reflects dissatisfaction with Unwin's medical judgment and a demand for different care, which does not establish a constitutional violation. *See Cesal v. Moats,* 851 F.3d 714, 724 (7th Cir. 2017); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016); *Grant v. Heidorn*, 802 F. App'x 200, 205 (7th Cir. 2020).

### 2. Dr. Mohammed Siddiqui

The same result follows for Siddiqui on the deliberate indifference claim. The undisputed record shows Siddiqui consistently evaluated Tuduj's complaints, provided treatment, and escalated care when warranted, reflecting professional judgment rather than indifference.

At their first relevant encounter on November 3, 2016, which primarily focused on permit renewals, Siddiqui prescribed triamcinolone cream, a standard topical corticosteroid, for Tuduj's reported rash. Tuduj admits he discontinued it after brief use due to perceived inefficacy and side-effect concerns, but the prescription remained active.

Subsequent visits in 2017 and 2018 were dominated by Tuduj's repeated demands for DMSO, a chemical agent and industrial solvent that is only FDA approved as an intravesical solution for the treatment of interstitial cystitis and extravasation, and is not FDA approved to treat herpes, zoster, smallpox, or any other medical condition. Siddiqui indicated he was unfamiliar with DMSO for treating Tuduj's reported symptoms and assessed Tuduj's rash as more consistent with eczema. On November 28, 2017, Tuduj refused a physical examination, limiting Siddiqui's ability to assess the condition further. Siddiqui continued to assess Tuduj's complaints in follow-up encounters on March 1,

2018, April 6, 2018, and August 3, 2018, reiterating that DMSO was not appropriate while documenting Tuduj's self-reported history. When Tuduj's August 3, 2018 complaints escalated to include facial rash and head/eye pain potentially implicating ocular involvement, Siddiqui promptly referred him to optometry for specialized assessment. That referral led to an August 10, 2018 evaluation by Dr. Sutterer, and by September 27, 2018, Siddiqui (along with Dr. Ritz) approved an offsite ophthalmology referral. Tuduj acknowledges these referrals were appropriate, and the ophthalmology evaluation with Dr. Unwin occurred on October 22, 2018, yielding normal findings.

Tuduj's primary arguments are that Siddiqui delayed the eye-care referral by nearly two years, did not provide any treatment at all, and refused to prescribe DMSO. These arguments do not create a genuine dispute. First, the alleged "delay" mischaracterizes the record. Tuduj's November 2016 visit with Siddiqui did not involve requests for ophthalmology or reports of ocular symptoms; it focused on a general rash, which Siddiqui treated topically. The record shows no urgent eye-related complaints to Siddiqui until August 2018, at which point the referral process was initiated. Prior encounters centered on Tuduj's DMSO demands and non-ocular rashes (e.g., groin area). Tuduj offers no admissible evidence that Siddiqui recognized an earlier serious risk of ocular herpes zoster yet consciously ignored it. Without such evidence, a mere disagreement about timing does not support deliberate indifference, particularly where the ultimate referral occurred promptly once eye symptoms were emphasized. *See Petties, 836 F.3d at 730* (delay must be inexplicable and serve no penological interest).

This record also refutes any "no treatment" claim, as Siddiqui provided evaluations, prescriptions, and referrals.

Tuduj's arguments as to DMSO establish a disagreement over treatment, not a constitutional violation. Tuduj, who lacks medical training, asserts he has VZV based on his belief about a childhood vaccine and prior records (e.g., the 2011 Faheem entry prescribing an antiviral for cold sores, and 2018 Sutterer notes mentioning "zoster"). But even assuming those records support a historical VZV diagnosis, they do not compel Siddiqui to adopt Tuduj's preferred regimen, particularly where DMSO lacks FDA approval for such conditions. Siddiqui exercised judgment by assessing the rash as eczema, prescribing an alternative topical, and referring for specialist input when symptoms suggested possible ocular issues. The Eighth Amendment entitles inmates to reasonable measures addressing substantial risks, not specific medications or tests on demand. No evidence shows Siddiqui knew better than to make the medical decisions he made or persisted in known ineffective treatment, refused specialist recommendations (none existed here), or chose an easier, less efficacious treatment, known to be ineffective. Second, Tuduj's DMSO insistence reflects disagreement over treatment, not a violation.[8] Lacking medical training, Tuduj self-diagnosed VZV based on childhood vaccine beliefs

---

[8] Plaintiff argues that his deliberate indifference claim is not premised on specifically seeking treatment with DMSO, pointing to his current willingness to accept alternatives to DMSO. Plaintiff's argument is unavailing, as the Eighth Amendment inquiry turns on Siddiqui's knowledge and response during the challenged encounters, when Plaintiff undisputedly demanded DMSO and rejected other treatments. *See Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). *See also Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Further, when deposed, although Plaintiff indicated he was willing to "take a treatment that is effective and that doesn't cause [him] more harm[,]" he further testified that the only treatment he knows of that fits that description is DMSO. (Doc. 129-1, pg. 161). Plaintiff's testimony demonstrates that his claim remains a disagreement over specific treatment, which does not rise to deliberate indifference.

and records (e.g., 2011 Faheem antiviral prescription; 2018 Sutterer "zoster" notes). But even assuming a historical VZV diagnosis, such a diagnosis did not obligate Siddiqui to prescribe unapproved DMSO. Siddiqui assessed eczema, prescribed alternatives, and referred specialists when ocular risks arose. The Eighth Amendment requires reasonable measures against substantial risks, not demanded remedies. *Forbes v. Edgar*, 112 F.3d 262, 266–67 (7th Cir. 1997).

One final note regarding whether Tuduj is demanding specific care in the form of DMSO. The plaintiff argues that his deliberate indifference claim is not premised on a specific demand for treatment with DMSO, emphasizing his current willingness to accept alternative remedies. This argument is unavailing. The Eighth Amendment inquiry must focus on Siddiqui's knowledge and response during the relevant encounters, at which time the plaintiff undisputedly insisted on DMSO while rejecting other proposed treatments. *See Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998) (explaining that deliberate indifference claims are evaluated based on the defendant's awareness and actions at the time of the alleged violation, not subsequent developments); *see also Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (reinforcing that courts assess the provider's mindset and decisions in the context of the contemporaneous facts). Shifting the analysis to the Tuduj's post-hoc flexibility would undermine the evaluation of the defendant's conduct under the deliberate indifference standard.

The Court further observes that Tuduj's professed willingness to accept other treatments is, in essence, still a demand for specific care tailored to his subjective criteria. During his deposition, Tuduj stated that he would be open to "a treatment that is effective

and that doesn't cause [him] more harm," but he immediately qualified this by testifying that the only treatment he knows of that satisfies these conditions is DMSO. (Doc. 129-1, pg. 161). This testimony reveals that the Tuduj's position is not a genuine openness to medical judgment but rather an insistence on a remedy that aligns with his personal standards of efficacy and safety; standards that, by his own admission, exclude all known alternatives except DMSO. Such a stance amounts to a fundamental disagreement over the course of treatment, which does not rise to the level of deliberate indifference under the Eighth Amendment. *See*, e.g., *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (holding that an inmate's dissatisfaction with prescribed care and preference for specific treatment, without proof of reckless disregard, constitutes a mere difference of opinion insufficient to support a constitutional claim). To establish deliberate indifference, the plaintiff must demonstrate that the defendant acted with a culpable state of mind akin to criminal recklessness, not simply that the chosen treatment failed to meet the inmate's expectations or that a hypothetical better option existed. Here, the record shows no such recklessness. Instead, it reflects a medical provider offering reasonable alternatives that the plaintiff rejected in favor of his preferred, unavailable remedy.

For these reasons, Siddiqui is entitled to summary judgment on Claim 1.

### B. Merits Analysis as to Claims 6 and 7 (Retaliation)

To prevail on a First Amendment retaliation claim, a prisoner must prove three elements: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter a person of ordinary firmness from engaging in that protected activity; and (3) the protected activity was at least a motivating factor in the

defendant's decision to impose the deprivation. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). The first element is often dispositive where the asserted "protected activity" is an oral confrontation: a verbal complaint is protected only if made "in a manner consistent with legitimate penological interests," and speech that is disruptive, confrontational, or "back talk" is not protected. *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (quoting *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010)); *Watkins*, 599 F.3d at 798–99; *see also Bridges*, 557 F.3d at 555 (skepticism that a mere threat to grieve is itself protected); *Maus v. Lade*, No. 22-2085, 2023 WL 334792, at *3 (7th Cir. Jan. 20, 2023) (same). By contrast, use of the prison grievance process is generally protected activity, but causation still requires proof that the defendant knew of the protected activity. *West v. Kingsland*, 679 F. App'x 482, 486 (7th Cir. 2016); *Irons v. Fiero*, 2025 WL 832211, at *4.

As to the causation element, the plaintiff must produce evidence, direct or circumstantial, from which a reasonable jury could conclude that the protected activity motivated the challenged action. *Thomas v. Anderson*, 912 F.3d 971, 976 (7th Cir. 2018); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965–66 (7th Cir. 2012). Circumstantial evidence may include suspicious timing, ambiguous statements, or differential treatment, but timing alone "will rarely be enough" to survive summary judgment. *Manuel v. Nalley*, 966 F.3d 678, 681 (7th Cir. 2020) (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)).

### 1. Claim 6, Retaliation as to Dr. Mohammed Siddiqui

Tuduj's First Amendment retaliation claim against Siddiqui stems from a medical visit on December 11, 2018, during which Tuduj requested that Siddiqui amend his existing double-mattress permit to specify "new" double mattresses. Tuduj contends Siddiqui refused his request in retaliation after Tuduj mentioned his intent to file a lawsuit related to the mattress dispute and/or Siddiqui's prior refusal to prescribe DMSO. The parties dispute the exact sequence of the exchange (i.e. whether Tuduj referenced litigation before or after Siddiqui declined to modify the permit), but this dispute is immaterial because the claim fails on multiple grounds even under Tuduj's version of events.

Tuduj's primary asserted protected activity is not the actual filing of a lawsuit or grievance but rather his verbal statement during the December 11 medical visit expressing an intent to sue. But a prisoner's speech is protected only if it is "made in a manner consistent with legitimate penological interests." *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (quoting *Watkins v. Kasper*, 599 F.3d 791, 796-99 (7th Cir. 2010)). Disruptive, confrontational speech, such as using threats of litigation to pressure a medical provider during a dispute over treatment or permits, does not qualify as protected activity. *Watkins*, 599 F.3d at 798-99; *see also Bridges*, 557 F.3d at 555 (expressing skepticism that mere threats to engage in First Amendment activity, like filing a grievance, are themselves protected). Nothing in the record indicates that Tuduj's litigation reference was anything other than a confrontational attempt to influence Siddiqui amid their disagreement over the mattress permit. Instead, the record shows

Tuduj had recently expressed dissatisfaction with another provider and sought a different one who might "give him what he wanted." This context reinforces that Tuduj's statement was inconsistent with legitimate penological interests in maintaining order and respect during prison medical visits.

Even assuming that Tuduj could establish that his reference to filing a lawsuit was protected activity under the first element, and further assuming that Siddiqui's refusal to add "new" to the permit could qualify as a deprivation likely to deter a person of ordinary firmness under the second element, the claim fails on causation. Tuduj must produce direct or circumstantial evidence from which a reasonable jury could infer that the protected activity motivated Siddiqui's action. Speculation or timing alone is insufficient, particularly at summary judgment. *Manuel v. Nalley*, 966 F.3d 678, 681 (7th Cir. 2020).

Tuduj offers no such evidence, relying instead on conjecture about Siddiqui's motives. The undisputed record shows that Siddiqui maintained Tuduj's double-mattress permit (originally issued by Siddiqui in 2017 for shoulder pain), ordered the requested knee sleeve, and explained that he was not responsible for mattress supplies or distribution. Siddiqui even involved Sgt. Snell to address the property-related aspect of Tuduj's request. Absent evidence that Siddiqui had authority to compel staff to provide Tuduj with "new" mattresses, as opposed to evaluating whether Tuduj medically qualified for a double mattress permit at all, a retaliatory motive cannot be inferred from Siddiqui's decision not to amend the permit. At most, the record reflects a disagreement over Siddiqui's role and limitations in the decision to issue "new" mattresses.

To the extent Tuduj relies on grievances as the protected activity, his claim also fails. Tuduj filed a grievance on October 19, 2018 seeking "new" double mattresses, but that grievance did not reference Siddiqui, and the record contains no evidence Siddiqui knew of it before the December 11 visit. An official cannot retaliate based on protected activity of which he is unaware. *West v. Kingsland*, 679 F. App'x 482, 486 (7th Cir. 2016). Tuduj then filed a grievance after the December 11 encounter that did reference Siddiqui and the "new" mattress issue. But that grievance cannot retroactively serve as protected activity motivating an earlier action. *See Weeks v. Warden*, No. 15 C 5234, 2017 WL 3404965, at *28 (N.D. Ill. Aug. 7, 2017). Finally, Tuduj suggests that grievances predating December 11, 2018 regarding DMSO/VZV motivated Siddiqui's alleged retaliation, but he does not point to any evidence linking those grievances to the dispute over the double mattress permit. Tuduj offers only speculation and conjecture which is not enough. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 544 F.3d 752, 757 (7th Cir.2008); *Soto v. Bertrand*, 328 F. App'x 331, 333 (7th Cir. 2009).

### 2. Claim 7, Retaliation as to Donald R. Unwin

Tuduj's retaliation theory against Unwin rests on two asserted motives: (1) that Unwin withheld testing or treatment because Tuduj was argumentative about "vaccine-induced" VZV during the October 22, 2018 visit; and (2) that Unwin's judgment was "clouded" by Tuduj's criminal case. Tuduj's claim fails at the outset because the exchange he describes, an argumentative, confrontational dispute with a medical provider, is not protected speech. *See Watkins v. Kasper*, 599 F.3d 791, 796–99 (7th Cir. 2010); *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023).

29

Even assuming that Tuduj could satisfy the protected-activity and deprivation elements, he still cannot establish causation. The undisputed record reflects that Unwin performed an ophthalmologic examination that was normal and did not diagnose a condition or recommend treatment, which is consistent with medical judgment and not retaliatory animus. Tuduj offers only speculation that Unwin's clinical decision was motivated by Tuduj's speech, and speculation cannot defeat summary judgment. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 544 F.3d 752, 757 (7th Cir.2008). Likewise, Tuduj's alternative theory that Unwin acted out of hostility based on Tuduj's criminal charges fails because the record contains no admissible evidence that Unwin knew anything about those charges, and an official cannot retaliate based on an alleged motive of which he is unaware. *See West v. Kingsland*, 679 F. App'x 482, 486 (7th Cir. 2016); *Irons v. Fiero*, 2025 WL 832211, at *4 (S.D. Ill. Mar. 17, 2025).

For these reasons, summary judgment is warranted for Unwin on Claim 7.

## CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Defendant Mohammed Siddiqui's Motion for Summary Judgment (Doc. 128); **GRANTS** Defendant Donald R. Unwin's Motion for Summary Judgment (Doc. 134); and **DENIES** Plaintiff Tom Tuduj's

Motions for Summary Judgment (Docs. 126 and 127). The Court **DIRECTS** the Clerk to close the case and to enter judgment accordingly.

      **SO ORDERED.**

      Dated: February 20, 2026

                                      DAVID W. DUGAN
                                      United States District Judge